### TICHENOR–GRAND CO. v. WEINGARTEN.

(Supreme Court, Appellate Term.  May 7, 1909.)

1. TROVER AND CONVERSION (§ 32*)—PLEADING—NATURE OF COMPLAINT.
      Where the complaint alleged that defendant hired three horses for an agreed term and price, and two of the horses were returned, but he neglected to return the third horse after demand, the complaint was not in conversion, as the horse was held under a bailment, and as bailee defendant assumed obligations other than the return of the horse.
      [Ed. Note.—For other cases, see Trover and Conversion, Dec. Dig. § 32.*]

2. BAILMENT (§ 31*)—ACTION AGAINST BAILEE—EVIDENCE—NEGLIGENCE.
      In an action for failure to return a horse hired to defendant, which was shot while in defendant's possession after its back was discovered to be broken, evidence *held* to show that the injury to the horse was not caused by defendant's negligence.
      [Ed. Note.—For other cases, see Bailment, Dec. Dig. § 31.*]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by the Tichenor-Grand Company against David Weingarten. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and DAYTON and GOFF, JJ.

William Paul Buchler, for appellant.
Manley & Grand, for respondent.

PER CURIAM. The complaint alleges that on June 6, 1908, defendant hired three saddle horses from plaintiff at an agreed term and price, and promised to return the horses at the end of the period; that two of the horses were returned by him, but he neglected to return the third horse, of the value of $400, after demand therefor. These allegations (except the hiring) were denied. The pleadings were verified.

Defendant claims that the complaint is in conversion. This is untenable, for the reason that the horse in question was held by him under a contract of bailment, and as such bailee he assumed obligations in addition to the return of the horse in question. The 224 type-

written pages of testimony disclose that on September 16, 1908, this horse, while gently ridden by a boy weighing about 120 pounds, showed signs of weakness. The boy dismounted. The horse was walked to a stable, where a veterinary discovered a fracture of the backbone, whereupon the horse was shot. It further appeared that since the hiring the horse had been used for jumping; also that the horse was in the sole charge of a stableman hired by the defendant on the recommendation of the plaintiff—a concededly careful man. Plaintiff claimed that the use of the horse for jumping was in violation of the purpose of the hiring as a "saddle horse" and that jumping was a common cause of fracture of the backbone of a horse, which injury would or might remain unrevealed for a considerable period of time. A mass of expert testimony on this subject was offered by plaintiff. The trial court, without a jury, found for the plaintiff in the sum of $275, on the ground that defendant had failed to show by preponderance that an injury that does not ordinarily occur was not incurred by his negligence, and proceeds as follows:

"I am convinced from the testimony that the horse started out on the morning of the accident with all of her bones in apparent good order, and during the hour or so he was out her back was broken. The statement of the boys who rode, and were with her on the ride, that nothing happened. during that ride to cause such an extraordinary occurrence, is not to my mind such explanation as the law requires of a bailee under those circumstances."

If the horse started out with all her bones in apparent good order, with the approval of the competent stableman recommended by the plaintiff, and if, as appears, the horse was being gently ridden by a boy, in company with others who say that nothing happened, the only possible explanation is the theory of the experts that the fracture of the backbone was the possible result of some previous jumping of the horse. The evidence shows that the jumping consisted of a bar which could be raised to five feet, but was not used at that height, and that the stableman mentioned always supervised that procedure, and that the horse was jumped for the last time about a week before the fracture. Barr, the stableman, testified that when this horse came to defendant it was in poor physical condition, that he sometimes jumped this horse, that it was proper for the horse to be jumped, and that the horse had not been injured by the jumping, as her poor condition related only to her being thin in flesh. The expert testimony was but speculative hypothesis. The "explanation" gathered from the record is sufficient to show that defendant cannot be charged with negligence for this occurrence. To hold him liable for the value of this horse in the circumstances would be unjust.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.